PETITION UNDER 28 U.S.C § 2254
BY A PERSON IN CUSTODY
PURSUANT TO A STATE COURT JUDGEMENT

| UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA | Division ⑩ |
|---|---|

| Name of Petitioner | Case No: 3:24-cv-358-BJD-LLL (to be assigned by the Clerk's Office) |
|---|---|
| VICTOR V. REED | |

| Prisoner ID # | Place of Current Confinement and Address |
|---|---|
| | FRANKLIN CORRECTIONAL INSTITUTION 1760 HIGHWAY 67 NORTH |
| D49096 | CARRABELLE, FLORIDA      32322 |

| NAME OF PETITIONER | | NAME OF RESPONDENT |
|---|---|---|
| | | RICKEY DIXON, Secretary; |
| VICTOR V. REED | v. | DEPARTMENT OF CORRECTIONS |

THE ATTORNEY GENERAL OF THE STATE OF FLORIDA

## I. PROCEDURAL HISTORY

A. Name and location (circuit and county) of the court that entered the Judgement of conviction or sentence under attack: Duval County Courthouse, 501 W. Adams Street, Jax, Florida 32202    Case Number: 16-2015-CF-4140 AXXX

B. Date of Judgement: November 17, 2017.

C. Date of Sentence: November 17, 2017.

D. Sentence Imposed: Life Confinement at the Florida Department of Corrections.

E. Identify all crimes of which you were convicted and Sentenced in this case (all Counts) Count I and II Sexual Battery with a "deadly weapon" and Count III - Sexual Battery - Lesser Included.

F. What was your Plea? (Check one) - NOT GUILTY.

G. IF You Pleaded not guilty, what kind of trial did you have? JURY.

H. Did You testify at a pre-trial hearing, trial, or Post-trial hearing? YES.

I. Did You appeal from the judgement of Conviction? YES.

J. IF You did appeal, Answer the following:

1. Name of Court: FIRST DISTRICT COURT OF APPEAL, 2000 Drayton Drive, Tallahassee, FLORIDA  32399-0950

2. Date Filed: November 16, 2018

3. Case Number: 1D17-5273

4. Date of Result: August 14, 2019

5. Citation to Case: VICTOR V. REED - Appellant - V. STATE OF FLORIDA - Appelle

6. Result: Denied (Per Curiam) Affirmed without an Opinion.

7. Grounds Raised on Appeal: (I.) THE TRIAL COURT ERRED IN ADMITTING IRRELAVANT AND PREJUDICIAL EVIDENCE OF THREE COLLATERAL SEXUAL BATTERIES. (II.) THE TRIAL COURT INFRINGED ON APPELLANTS CONSTITUTIONAL RIGHTS TO FULLY CROSS-EXAMINE A KEY STATE WITNESS (III.) THE TRIAL COURT GAVE THE JURY A WILLIAMS RULE INSTRUCTION NOT IN EFFECT AT THE TIME ALLEGE CRIME WERE COMMITTED.

8. Did You File a Petition for rehearing? NO.

9. Did You SEEK review in the Florida Supreme Court? NO.

2

10. Did You file a Petition for Certiorari in the U.S. Supreme Court? NO.

K. Other than the direct appeals listed above, have you filed any other Petitions, applications or motions challenging judgement of Conviction in any state court? YES.

L. IF You answer to Question K is YES, Answer the following:

① NAME OF Court: Duval County Courthouse, 501 W, Adams Street, Jax, Florida 32202

2. Identify what you filed: <u>First</u> Motion For Post-Conviction RELIEF under Fla. R. Crim.P., Rule 3.850

3. Case Number: 16-2015-CF-4140 AXXX - Date filed: 4-29-2019

4. Grounds Raised: Appellant Raised in his <u>First</u> Motion 3.850 only two Grounds.
   ①. Defense Counsel was ineffective for failing to make the proper objection and WAIVING THE DEFENDANTS MELBOURNE ISSUE FOR STATE'S PEREMPTORY CHALLENGE AND STRIKES OF AFRICAN AMERICAN JURORS FOR APPELLATE REVIEW BY FAILING TO RENEW HIS OBJECTIONS BEFORE THE JURY WAS SWORN. (II). INEFFECTIVE ASSISTANCE OF COUNSEL - DEFENSE COUNSEL WAS INEFFECTIVE FOR "OPENING THE DOOR" DURING DIRECT EXAMINATION OF THE DEFENDANT TO SIMILAR CRIMES OR PRIOR BAD ACTS WHICH DEFENDANT WAS ON TRIAL FOR, ALLOWING THE STATE TO INTRODUCE INTO EVIDENCE AND QUESTIONED DEFENDANT ON CROSS-EXAMINATEOD ABOUT A COPY OF THE DEFENDANTS UNREDACTED PLEA AGREEMENT FORM FOR THE SAME CHARGED OFFENSES THAT DEFENDANT HAD PLEADED GUILTY TO.

5. Was an evidential hearing held on your petition or Motion? NO.

6. Result: Dismissed to LEAVE TO AmenD and re-file one motion for Post-Conviction relief not to exceeding Fifty (50) Pages. - Filed on Oct. 3, 2020.

See Exhibit (A) Page 8-A
in the EXHIBIT PAGES

next Page → (4)

M. IF You filed a Second Petition, application, or Motion, Answer the following:

1. NAME OF COURT: Duval County Courthouse, 501 W, Adams Street, Jax, FLA 32202.

2. Identify What you filed: AMENDED MOTION FOR POST-Conviction RELIEF 3.850

3. Case Number: 16-2015-CF-4140 AXXX

4. Ground Raised: Appellant filed 16 grounds in this Amended MOTION See, Exhibit (B)- Page 9-A in the Exhibit Pages - AMENDED MOTION 3.850 POST-Conviction RELIEF For Grounds Raised.

5. Was an evidentiary hearing held on your motion? NO.

6. Result: Denied. Date of Result: 12-28-2020 - Mandate issued-12-31-2021

* ON about January 19, 2020, Appellant filed a Notice of Appeal to the FIRST DISTRICT COURT OF APPEAL TO REVIEW The DECISION OF THE CIRCUIT COURT in DUVAL COUNTY, FLORIDA.      See EXHIBIT (B) on page 9-A of the Exhibit Pages.

N. IF you filed a third petition, application, or motion, answer the following:

1. NAME of COURT: FIRST DISTRICT COURT OF APPEAL, 2000 DRAYTON DRIVE, Tallahassee, FLA. 32398-0950

2. Identify what you filed: APPEAL From the Circuit Court for Duval County, August 18, 2021.

3. Case Number(s): Lower trubunal - 16-2015-CF-4140 AXXX

        * DCA Number: 1D21-0335 - Date Filed: Oct. 26, 2021

next Page-[5]

4

4. Grounds Raised: (Same) - in Motion For Post-Conviction RELIEF 3.850
                              Under Fla. R. Crim. P.   Rule 3.850
5. Was an evidentiary hearing held on your petition or Motion?   NO.
6. RESULT: Affirmed - REED-V-STATE, 274 So.3d 278 (Fla. 1st DeA 2019).
   Date of Result: 12-28-2020 - MANDATED: 12-31-2020


* FOURTH MOTION FILED *

1. Name of Court: FIRST DISTRICT COURT OF APPEAL, FIRST DISTRICT OF FLORIDA, 2000
              DRAYTON DRIVE, TALLAHASSEE, FLORIDA  32399-0950
2. Identify what you Filed:  MOTION FOR REHEARING
3. Case Number: DCA number: 1D21-0335 - Lower Court number: 16-2015-CF-4140 AXXX
4. Grounds Raised: (SAME) as in the Original Motion.
5. WAS an evidentiary hearing held on your motion?  NO.
6. Result: DENIED. - DATE of RESULT: Oct. 25, 2021

                              See Exhibit(C) on Page 10-A in the Exhibit
                                   Pages. MOTION FOR REHEARING
                                      (13-17)


* FIFTH MOTION FILED *

1. NAME of Court: FIRST DISTRICT COURT OF APPEAL, 2000 DRAYTON DRIVE, TALLAHASSEE, FLA
              32399-0950
2. Identify what you Filed: PETITION FOR WRIT OF HABEAS CORPUS FOR IMMEDIATE
              RELEASE AD SUBJICENDUM

Next Page → (6)

3. Case number: Appeal number: 1D21 - 1388 - L.T. number: 16-2015-CF-4140 AXXX
   Date Filed: MARCH 1, 2021 - March 30, 2021

4. Grounds Raised: See EXHIBIT (D) in the Exhibit Pages - AMENDED MOTION
                   SUBJICENDUM PETITION FOR HABEAS CORPUS FOR IMMEDIATE
                   RELEASE.

5. Was an evidentiary hearing held on your motion? NO.

6. RESULT: Dismissed to be filed in 60 days.
   Date of RESULT: Mandate: November 19, 2021
   Date Filed: February 23, 2021


* SIXTH MOTION *

1. Name of Court: FIRST DISTRICT COURT OF APPEAL, 2000 DRAYTON DRIVE, TALLAHSSEE, FLA,
   32399-0950

2. Identify what you filed: AMENDED PETITION FOR WRIT OF HABEA Corpus - Ineffective
                            ASSISTANCE OF APPELLATE COUNSEL   9.141(d)

3. Case number: DCA number: 1D21 - 2939 - L.T. number: 16-2015-CF-4140 AXXX
   Date Filed: September 9, 2021 - Date Denied: September 6, 2021

4. Grounds Raised: See Exhibit (E) on Page 12-A of the Exhibit Pages - Grounds
                   Raised For AMENDED PETITION FOR WRIT OF HABEAS Corpus
                   Ineffective Assistance OF APPELLATE Counsel - 9.141(d)

5. Was an evidentiary hearing held on your motion?   NO.

6. Result: Denied

                                        next Page → (7)

6

\* <u>Part of Fifth Motion Filed</u> \*
<u>on PAGE(S) 5 - 6 of this motion</u>

Other Motions FILED (Addition Motions)

Question (N.)

1.- Name of Court: Circuit Court of the Fourth Judicial Circuit,

Duval County, Florida

2 - Identify what you FILED: "Ad Subjiciendum Petition For

Habeas Corpus For Immediate Release". Filed Pursuant to

Section 79.01 and 79.09, Florida Statues, and Florida Rule of

Civil Procedure 1.630, on February 23, 2021.

3 - Case Number (if Known): 16-2015-CF-4440 AXXX

4 - Grounds Raised: ① Practiced fraud upon The Court ② The State

prosecution violated Article I Section (15)(A) of the Florida

Constitution and Clearly established ruled of Florida Rules

of Criminal Procedure 3.140 (g) because they failed to obtain

the alleged Victim's Sworn Statements to support elements of

the Crimes charged, warrants a dismissal of all crimes,

\* <u>SEVENTH MOTION FILED</u> \*

1. NAME OF Court: FIRST DISTRICT COURT OF APPEAL, 2000 DRAYTON DRIVE, TALLAHASSEE, FLORIDA   32399-0950

2. Identify what you filed: MOTION FOR HABEAS CORPUS - DEFECTIVE MIRANDA WARNING

3. Case number: DCA number: 1D22-1234
                 LT. number: 16-2015-CF-4140 AXXX

4. Grounds Raised: Defective Miranda Warning by Detective

5. Was an evidentiary hearing held on your motion? NO.

6. Result: Denied.
                        See Exhibit (F) on Page 13-A in the
                        Exhibit Pages-Miranda Warning

\* <u>EIGTH MOTION FILED</u> \*

1. Name of Court: Supreme Court OF FLORIDA, 500 South Duval Street, Tallahassee, Florida  32399-1927 - <u>OPINION Date</u>: July 7, 2022

2. Identify what you filed: DISCRETIONARY REVIEW

3. Case number: SC22-42  — LT. number: 16-2015-CF-4140 AXXX

4. Grounds Raised: Counsel Failed to Renew his Melbourne/Batson Challenge a second-time to preserve for Appellate Review

5. Was an evidentiary hearing held on your motion? NO.

6. Result: Dismissed — Supreme Court refuse to take Jurisdiction.
                        See Exhibit (G) on Page 14-A - in the Exhibit
                        Pages - Discretionary Review

7

O.   FIRST PETITION FILED ON APPEAL

1) <u>NAME OF Court</u>: FIRST DISTRICT Court of Appeal 1st DISTRICT of Florida.

2. Identify what you filed: Appeal from the Circuit Court for Duval County. August 18 2021.

3. Case Number(s): 16-2015-CF-4140 A X X X —
   1st District Case Number: 1D21-~~335~~ 5
   · DATE FILED: Oct. 26, 2021

4. <u>Grounds Raised</u>: (Same) Motion For Post - Conviction RELIEF Under Fla. R. Crim. P. Rule 3.850.

5. Was an evidentiary hearing held on your petition or motion?  ☐ YES   ☒ NO

6. Result: Affirmed / REED V. State, 276 So. 3d 278 (Fla. 1st DCA 2019). DATE OF RESULT: 12-28-2020 MANDATED: 12-31-2020.

O.    Did you appeal to the highest state court having jurisdiction over the action taken on your Petition, application, or Motion?

1. First Petition :   YES. ☐   NO ☒
2. Second Petition :   YES.
3. Third Petition :   YES.

(a). IF you did *not* appeal the result, explain briefly why not :

The First Petition was the direct appeal which was done by Appellate Counsel, which was denied without an opinion and could not be reviewed by the Florida Supreme Court

(b) IF you did file an appeal, what was the result : The Second and Third Motions 3,850 Post-Conviction and REHEARING Motion 3.850 and 9.141(d) Motion and Immediate Release Motion was denied.

(c) The Rule 3.850 Motion and Motion For REHEARING was Denied on 12-28-2020
The 9.141(d) Motion was Denied on its Merits on September 6, 2021
The AMENDED Motion SUBJICENDUM Petition For WRIT of HABEA CORPUS FOR IMMEDIATE RELEASE was dismissed to be refiled in 60 days, which appellant then filed these claims in his 9.141(d) Motion and these claims was denied on there Merits on September 6, 2021.

P.    HAVE you previously filed a §2254 Petition or other Pleading regarding the validity of your state Conviction or sentence in any federal court? NO.

Result: N|A

_____

_____

Appeal?  ☐ YES  ☒ NO  Result: _____N|A_____

_____

## II.  GROUNDS RAISED IN CURRENT § 2254 PETITION

**ATTENTION:** *To proceed in federal court, you must ordinarily first exhaust all available state court remedies on each ground raised in this petition. Also, if you do not set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.*

For this petition, state *all* grounds on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. You must provide a summary of *specific facts* in support of each ground raised. Do not argue or cite case law. A supporting memorandum of law, not exceeding 10 pages, may be attached to this petition presenting legal argument, but all supporting facts *must* be set forth in this petition. (*Attach additional pages as needed if you are raising more than four grounds.*)

A. Ground One: Melbourne Progeny - Ineffective of Counsel; Failing to Renew his Objection a Second-time before accepting jury to preserve for Appellate Review

1. Supporting Facts:

Under Florida law, that simply objecting to the State's possibly discriminatory strikes and then counting any purportedly race-neutral explanations given by the prosecution, does not suffice to preserve a Melbourne claim for appeal, Rather trial counsel must press the already rejected challenge a second-time at the conclusion of voir dire, either by expressly renewing the objection or by accepting the jury pursuant to a reservation of this claim, Joiner, 618 So. 2d 759, 765 (Fla. 1994). See Attachment page - Page (1-A) A-D

2. Did you raise this claim in State court by direct Appeal? ☐ YES   ☒ NO
if you did not raise this claim, explain why: It is unknown to petitioner why appellate counsel did not raise or amend this issue to her direct appeal.

3. Did you raise this claim in a Rule 3.850 motion or Otherwise? ☒ YES   ☐ NO
If Yes, explain how it was raised (type of Petition): This Claim was raised in Ground one of the Motion For Post Conviction Relief 3.850, filed 4-27-2018.

(A) Name and location of the Court where the motion or petition was filed: Duval County Courthouse, 501 W. Adams Street, Jacksonville, Florida 32202

(b). Case # (if known): 16-2015-CF-4140 AXXX-MA

See Attachment Pages - Attachment (one) Page 1-A.

(c) Date of Decision: 12-28-2020 - Mandate: 12-31-2020

(d) Result: Denied

4. Did you receive a hearing on your motion or Petitition? ☐ Yes  ☒ No

5. Did you appeal from the denial of your motion or Petition? ☒ Yes  ☐ No

6. Was ground One raised in your appeal? ☒ Yes  ☐ No

(a). If Not raised in your appeal, why not?  N/A

(b). Identify the Name and location of the Court where appeal was filed:

FIRST DISTRICT COURT OF APPEAL, FIRST DISTRICT OF FLORIDA, 2000 Drayton

Drive, Tallahassee, Florida  32399-0950

c. Case # (if Known): 1D21-335

d. Date of Decision: 09-06-2022

e. Result: Denied

7. Identify any Other Way in which you Exhausted State remedies for Ground ONE:

Ground One was also filed in my 9.141 (d) Ineffective Assistance of Appellate Counsel

and also in my Discretionary Review to the Supreme Court.

13

Ground Two: Prosecutor's Flammatory and Prejudiced Comments in
Opening Statement

1. Supporting facts: See Attachment Pages - Attachment Two (pg 2-B)

2. Did you raise this claim in state court by direct appeal? ☐ Yes  ☒ No

if You did not raise this claim, explain why: It is unknown why Appellate Counsel
did not raise or amend this claim to her direct appeal.

3. Did you raise this claim in a Rule 3.850 motion or Otherwise?
☐ Yes  ☒ No

This claim was raised in the 9.141 (d) Motion Ineffective Appellate Counsel. It
was not raised in the 3.850 motion because at the time, petitioner was a layman
in law.

2 Name and location of the court where the motion or petition was filed:

First District Court of Appeals, 2000 Drayton Drive, Tallahassee, Florida 32399-0950

b. Case # (if known): 1D21-0335

c. Date of Decision: 09-06, 2022

d. Result: Affirmed without an Opinion

4. Did you receive a hearing on your motion or petition? ☐ Yes ☒ No

5. Did you appeal from the denial of your motion or petition? ☒ Yes ☐ No

Petitioner is appealing to this court because with out an Opinion can not access the Florida Supreme court for appeal.

6. Was Ground Two raised in your appeal? ☒ Yes ☐ No

a. If not raised in your appeal, why not? N/A

b. Identify the name and location of the court where appeal was filed:

United States District Court Middle District of Florida - Jacksonville Division; US Court house, 300 N. Hogan Street, Suite 9-150, Jacksonville, Florida 32202.

See Attachment Two - page 2-B - in the Attachment Pages - Ground Two

c. Case # (If known) N/A

d. Date of Decision - N/A

e. Result - N/A

7. Identify any other way in which you exhausted state remedies for Ground Two of filing to this Honorable Court in this 2254 motion.

C. Ground Three: Ineffective assistance of Counsel; Failed to file an adequate Motion for Judgement of Acquittal.

1. Supporting facts:

See Attachment Three – Pg 3 – C – in the Attachment Pages.

2. Did you raise this claim in state Court by direct appeal? ☐ YES ☒ NO

If you did not raise this claim, explain why: It is unknown to Petitioner why appellate Counsel did not raise or amend this claim on her appeal.

3. Did you raise this claim in Rule 3.850 motion or Otherwise?

This Claim was argued in my 3.850 motion and 9.141(d) Motion Ineffective Assistant of Appellate Counsel

16

IF YES, explain how it was raised: This claim was argued in my 9.141(b)(5) Motion.

a. Name and location of the court where the motion or Petition was filed:

FIRST DISTRICT COURT OF APPEAL, 2000 DRAYTON DRIVE, TALLAHASSEE, FLA 32399-0850

b. Case # (if known): 1D21-0335

c. Date of Decision: 09-06-2022

d. Result: Denied on Merits

4. Did you receive a hearing on your motion or Petition? ☐ YES  ☒ NO

5. Did you appeal from the denial of your motion or Petition? ☒ Yes  ☐ NO

6. WAS Ground Three raised in your appeal? ☒ YES  ☐ NO

a. IF NOT raised in your appeal, why not?  N/A

b. Identify the name and location of the court where appeal was filed: This claim is being raised in this 2254 motion, United States DISTRICT COURT MIDDLE DISTRICT COURT OF FLORIDA, U.S. Court House, 300 N. Hogan Street, Suite 9-150, Jacksonville, Florida 32202

c. Case # (if Known): N/A — has not been assigned by Clerk(s).

14

d. Date of Decision: N/A

e. Result:    N/A

7. Identify any other way in which you exhausted State remedies for Ground

Three:  N/A

D. Ground Four : Trial court erred in admitting the similar act testimony of other
                women (Williams Rule)

1. Supporting Facts :

    See Attachment Pages - Attachment Four - Pg 4-D

2. Did you raise this claim, in state court by direct appeal? ☐ YES  ☒ NO

If you did not raise this claim, explain why? It is unknown to petitioner
why appellate counsel did not raise or amend this claim to her direct appeal motion.

15

3. Did you raise this claim in Rule 3,850 Motion or Otherwise?
   ☒ Yes   ☐ No

IF Yes, explain how it was raised: This claim was raised in my 3,850 motion
as Ineffective Assistance counsel from allowing the Williams Rule Evidence to
come in and Trial court erred by granting the State's motion to allow evidence of other
crimes. Also this claim was raised in my 9,141(a)5 motion.

(a) Name and location of the Court where the motion or petition was filed:

1. Duval County Courthouse, 501 W, Adams Street, Jacksonville, Florida, 32202
2. First District Court of Appeals, 2000, Drayton Drive, 328 99-0950, Tallahassee,
Florida,

(b) Case # (if known): Duval County Courthouse - 3,850 motion: 16-2015-CF-4440AAAKMA
~~Criminal Case~~   First District Court of Appeal - 9,141(a)5 motion: 1D21-0335

(c) Date of Decision: Duval County Courthouse - 12-28-2020 / Mandate: 12-30-2020
            First District Court of Appeal - 09-06-2022.

(d) Result: Duval County Courthouse - Denied,    3,850 motion
            First District Court of Appeal - Denied on Merits - 9,141(a)5 motion

4. Did you receive a hearing on your motion or petition? ☐ Yes   ☒ No

5. Did you appeal from the denial of your motion or petition? ☒ Yes   ☐ No

6. Was Ground Four raised in your appeal? ☒ Yes   ☐ No

a. If not raised in your appeal, why not?  N/A

b. Identify the name and location of the Court where appeal was filed:

16

This claim is now being raised in this appeal to this court.

c. Case # (if known):    N/A
d. Date of Decision:    N/A
e. Result:    N/A

7. Identify any other way in which you exhausted State remedies for Ground Four:
          N/A

E. Grounds Not Previous Raised

   Is there any ground raised in this Petition that has not already been presented in either State or federal court? ☒ YES    ☐ NO

   IF SO, state the reason(s): At the time these claims became known to petitioner he was a layman in law and is depending on this court to treat him as such and to afford him due process. Defendant would have brought these issues in a timely manner if he had been properly trained at law, or could have afforded an attorney.

              See Attachment on back page ⟶

              Grounds not Previous Raised ⟶

17

Attachment

E. 'Grounds Not Previously Raised

See Attachment Page

Ground One - Sub-Claims

A, B, E - Attachment One - Page 1-A

Ground Two - Sub-Claims

C, D - Attachment Two - Page 2-B

Ground Three - Sub-Claims

A, D, C - Attachment - Page 3-C

Ground Four - Sub-Claims

C, D - Attachment - Page 4-D

Ground Five - Sub-Claims

C, D - Attachment - Sub-Claims - Page 5-E

Ground Six - Sub-Claims

C, D - Attachment - Page 6-F

Ground Seven - Sub-Claims

A, C - Attachment - Page 7-G

Ground Eight - Sub-Claims

A, B - Attachment - Page 8-H

(Cont)
17

**F. Pending Proceedings**

Do you have any petition or appeal currently pending (filed, but not yet

decided) in *any* court (state or federal) for the judgment being challenged in

this petition:

☒ YES    ☐ NO

Please explain: There's An DNA MOTION 3.853 Filed by an Attorney that's
Still Pending in the lower Circuit Court of Duval County Courthouse, Jax, Fla 32202
And a 3.800(a) Motion Pending in the Same Court.

**G. Future Sentence**

Do you have any future sentence to serve (*as in a consecutive sentence

imposed*) after you complete the sentence for the judgment challenged in this

petition?

☐ YES    ☒ NO

1. If so, identify the other sentence: _____ n/a _____

2. Name and location of the court that imposed that sentence: _ n/a _

   _____

3. Date Sentence was Imposed: _____ n/a _____

4. Case Number: _____ n/a _____

**H. Timeliness of Petition**

If your judgment of conviction became final over one year ago, explain why

the one-year statute of limitations as stated in 28 U.S.C. § 2244(d)[i] does not

bar this petition: _As of this Date, This Petition will be filed_
_in a timely manner._

_____

_____

## III.  RELIEF SOUGHT IN CURRENT § 2254 PETITION

Petitioner requests the Court grant this § 2254 petition and provide the

following relief: _Reversal of Conviction and Sentence(s);_
_Awarding new trial;_
_Awarding of an evidentiary hearing; and_
_Any other relief this Court deems just and Proper_

_____

_____

_____

_____ or any other relief to which Petitioner is entitled.

Signature of Attorney (*if any*): _____ _N/A_ _____

**I certify and declare, under penalty of perjury, that the foregoing is true**

**and correct and that this petition was (*check one*) ☑ delivered to prison**

**officials for mailing or ☐ deposited in the prison's mail system for mailing**

on the _____ day of _____, 20 23 .

Date: _____ Petitioner's Signature: _____

*(If the person signing above is not the petitioner, state relationship to the*

*petitioner and explain why the petitioner is not signing this petition below.)*

_____ N/A _____

_____

Printed Name of Petitioner: Victor J. Reed

Prisoner ID #: D49096

Correctional Institution: Franklin Correctional Institution

Address: 1760 Highway 67 North, Carrabelle, Florida 32322

_____

*(You must timely notify the Clerk's Office if there is any change to your*

*mailing address.)*

_____

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court

and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## INEFFECTIVE Assistance of Counsel — Standard of REVIEW

To prevail on a claim of ineffective assistance of counsel, the defendant must show that: (1) counsel's performance was outside the wide range of reasonable professional assistance, and (2) counsel's deficient performance prejudiced the defense. Strickland — v. — Washington, 466 U.S. 668, 687. (1984); Cherry — v. — State, 659 So. 2d 1069, 1072 (Fla. 1995). The defendant must demonstrate both ineffectiveness and prejudice in order to state a sufficient claim for relief. Strickland, 466 U.S. at 687; Stephens — v. — State, 748 So. 2d 1028, 1033 (Fla. 1999).

The first prong of Strickland involves a "context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time." Jones — v. — State, 928 So. 2d 1178, 1186 (Fla. 2006) (quoting Wiggins — v. — Smith, 539 U.S. 510, 523 (2003)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and the defendant bears the burden of proving that the representation was unreasonable under the prevailing professional norms. Strickland, 466 U.S. at 688-89. To demonstrate the prejudice prong, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; See Valle — v. — State, 778 So. 2d 960, 965-66 (Fla. 2001). A claim of ineffective assistance of counsel will warrant an evidentiary hearing only where the defendant alleges "specific facts which are not conclusively rebutted by the record and which demonstrate a deficiency in performance that prejudiced the defendant." Roberts — v. State, 568 So. 2d 1255, 1259 (Fla. 1990).

## STATEMENT OF THE CASE AND FACTS

On August 15th, 2017, the State filed a Second Amended Information charging Reed with three counts of Sexual Battery against two adult females for events that occurred in 2007 and 2008. Count One alleged penile-vaginal contact against V.P., with use or threatened use of a deadly weapon (knife), and/or coercing V.P. to submit to use of force or violence likely to cause serious injury, pursuant to Sections 794.011(3) and 794.011(4)(b), Florida Statutes. Count Two alleged penile-oral penetration under the same statutory provision as to V.P. Count Three alleged penile-vaginal contact under the same provisions as to T.D. **(R-221)** Reed was charged after his DNA matched swabs that had been collected in Sexual Battery investigations for V.P. and T.D.

V.P. testified that on May 18th, 2008, she was house-sitting for her brother. **(T-218)**. V.P. acknowledged that at that time she was using "[w]eed and cocaine" but maintained that she had a clear recollection of what occurred in the early morning hours of the date in question. (T-**219**). The victim "decided to go into town" so that she could flip some weed." **(T-129)**. V.P. was sitting on a park bench when she first encountered Reed. **(T-219-20)**.

The encounter began when Reed allegedly approached V.P. in an "older van" and offered to give her ride. **(T-220-21)**. Before the date of the alleged crime, V.P. had never met Reed. **(T-246)**. V.P. accepted and entered Reed's vehicle but soon "noticed [they] weren't going to [her] destination." **(T-222)**. At some point, Reed "approached [V.P.] and he told her what he wanted." **(T-222)**. Shortly after, Reed stopped the vehicle and "put [a] blade to her throat." Reed allegedly then stated, "If you don't do as I say, I'll cut your scar out." **(T-224)**.

V.P. told Reed that she did not want to perform oral sex upon him; Reed pulled the victim onto a mattress located in the back of his van and then "raped V.P. ..... violated V.P. .....violated V.P.'s body." **(T-225)**. Reed then penetrated the victim with his penis, first orally and

3

then vaginally. (**T-225**). "When Reed was done, he pulled his britches back together, pushed V.P. to the curb, got back in the van and left." (**T-226**). V.P. was in a great deal of anguish and physical pain. (**T-226**). V.P. "tried to get her bearings .... and then found her way to the hospital." (**T-227**).

After V.P. informed hospital staff of what had happened, a law-enforcement officer wrote a police report and escorted her to the Rape Crisis Center where she was examined. (**T-227**). V.P. described the examination as "demoralizing and demeaning." (**T-227**). On the date of the alleged rape, V.P. was not suffering from dementia. (**T-245**).

T.D. testified that in October of 2007, she was working as a head housekeeper for Red-Roof Inn. (**T-375**). In the late evening of October 5th, 2007, T.D. walked to Burger King. (**T-376**). On the way, a man in a vehicle approached her and stated, "nice weather if you're a duck", apparently it was raining at the time. (**T-376**). The man offered T.D. a ride and she had accepted. (**T-377**). After T.D. entered the vehicle, the man told T.D. that he had to do an errand. (**T-386**). T.D. ended up in a vacant lot where she was threatened with a black firearm. (**T-378**). The firearm was pointed at T.D.'s head. (**T-386**). T.D. stated that Reed told her he would put a cap in her ass if she did not follow orders. (**T-379**). The man made T.D. remove her clothing which she complied with. (**T-379**). The man pointed the gun at T.D., and then he put the gun down and raped her. (**T-380**). T.D. specified that the man forced her to have penile-vaginal sexual intercourse. (**T-380**). After the alleged rape, the man asked T.D. for her purse where she had just cashed her check from the Red-Roof Inn. (**T-380, 388**). After existing, T.D. began knocking on doors to get help. (**T-380-81**). T.D. borrowed someone's phone and reported the crime to the police who took the victim to a place where you get examined. (**T-381**). T.D. underwent a pelvic exam, which she described as very uncomfortable, humiliating. (**T-382**).

Powell, then a Deputy Sheriff employed by the JSO, testified that on May 18th, 2008, while working patrol he was dispatched to a sexual battery investigation. **(T-248)**. Powell encountered V.P., who was crying and upset. **(T-249)**. V.P. described the crime to Powell, stating that she was seated on a bench when an adult African American male approached in an MPV van. **(T-250)**. According to V.P., the driver was approximately 5'9, was approximately 170 pounds, was in his late thirties, and had dark skin, a bull nose, and close set eyes. **(T-251)**. The man identified himself as Lawrence, Jr. from Georgia. **(T-251)**. The man asked V.P. whether she needed a ride which V.P. accepted and entered the vehicle and told man to take her to the Cassat area of Jacksonville. **(T-251)**.

At some point, the driver started to yell at her about how women were bitches. **(T-252)**. V.P. became frightened, eventually, man parked beside a house. **(T-252)**. Shortly after, the man pulled a large knife out on the victim and held it against her throat, after which he directed her to undress. **(T-252)**. According to Powell, V.P. reported that the sexual battery occurred in Reed's van. **(T-252)**. Specifically, the victim reported that Reed's penis penetrated her orally and vaginally. **(T-287)**. Reed did not use a condom. **(T-253)**. After the sexual activity, V.P. dressed and exited the vehicle. **(T-253)**. V.P. left her purse, wallet, and identification in the van. **(T-253)**. V.P. walked to Shands hospital but did not receive any help there. **(T-253-54)**. V.P. subsequently called police from her cell phone. **(T-253)**. Powell took V.P.'s report and then transported her to the sexual assault treatment center. **(T-254)**.

Reed's Trial Counsel stipulated to the following: (1) that a Sexual Assault Kit was collected by a doctor from V.P., (2) that semen was found on the vaginal swabs, (3) that a full DNA profile was developed, (4) that the FDLE also developed a full DNA profile for Reed, and (5) that the DNA profile from the swabs matched the DNA profile from Reed. **(T-268)**.

Choulat, a sexual assault nurse examiner, testified that in 2008 she was emploted at the Sexual Assault Response Center in Jacksonville. (T-276). On May 18th, 2008, Choulat conducted an examination of V.P. during which the nurse found a bleeding vaginal tear. According to Choulat, the bleeding tear indicated that the injury was sustained no more than twelve hours before the examination. (T-290, 297). V.P. reported that Reed did grab her and he pulled her clothes off and he pushed her into the back seat, so there was grabbing and pushing and pulling and tussling. (T-298). V.P. further reported that her vagina had been penetrated by a penis. (T-295). There was a navicular tear, which was consistent with blunt force trauma. (T-289-90). Further, V.P. also had a contusion on her ankle, it was approximately seven by five centimeters. (T-298). There was a tear below V.P.'s navicularis. (T-299). And, the nurse observed ecchymosis. (T-300). At the time of the examination, the victim was beyond angry and claimed to be suicidal. (T-282). According to Choulat, the victim was sobbing and exclaimed, "I've got to go home." (T-282).

After receiving an instruction on Williams Rule Evidence, Choulat testified about her interactions with A.T. whom the nurse examined on September 1st, 2009. (T-300). The examination took place at SARC[1] after she reported being sexually assaulted in the back of an old van. (T-304). Before the assault, the driver of the van asked the patient whether she wanted a ride. (R-304). A.T. declined, however, the driver brandished a firearm and insisted that she needed a ride. (T-304). The female was driven around until the van pulled behind a house. (T-304). Then, the driver reached over and pulled a lever to put her seat all the way back ..... allegedly Reed then forced A.T. to fellate him. Reed ripped A.T.'s shirt off. (T-305). The nurse found that A.T.'s introitus had stellate tears. (T-307). Further, A.T. had a navicular tear that was

---

[1] Sexual Assault Response Center. (T-276).

bleeding at 6:00 right in the very bottom of the opening to the vagina. (**T-313**). A.T. was tearful at times. (**T-303**). DNA swabs were collected from A.T.

Choulat also testified about an examination she performed on a different patient, J.K. (**T-292**). This exam, which occurred October 12th, 2011, was conducted upon J.K., who reported having been vaginally assaulted at approximately 9:00 a.m. behind an empty house that he had driven her to. (**T-293**). J.K. reported that the rapist did grab her and he pulled her clothes off and he pushed her into the back seat, so there was grabbing and pushing and pulling and tussling. (**T-298**). J.K. suffered a tear, not through the navicularis, but below it. (**T-299**). Choulat also discovered a little bit of swelling and the ecchymosis, which is bruising and superficial navicular tear at 6:00. (**T-300**). Further, J.K. had a contusion on her right ankle, and ther were areas that fluoresced under black light. (**T-300**). The indications above were consistent with assault. (**T-300**). The perpetrator of the sexual battery did not use a condom. (**T-295**). J.K. was an adult, white female. (**T-293**).

Krueger, a law-enforcement officer employed with JSO, testified that on October 6th, 2007, he was dispatched to a sexual assault. (**T-412**). He met with T.D., wrote a report and transported T.D. to SARC. (**T-413**).

Dyal, a law-enforcement officer employed with JSO, testified that at approximately 4:00 a.m. on March 17th, 2008, he was on duty as a patrol officer. (**T-416, 418**). During his shift, he was dispatched to a sexual battery and met with T.B. (**T-417**). Dyal interviewed T.B., wrote the police report and then transported T.B. to SARC. (**T-417**).

During a proffer, Dyal was asked whether T.B. knew Reed because she had previously prostituted with him and Dyal responded affirmatively. (**T-421**). The State objected on hearsay grounds. (**T-421**). The trial court refused to admit the evidence, maintaining its previous ruling.

(**T-421**). Bouchey, an emergency physician, testified that between 2006 and 2008, he worked at the SARC. (**T450**). On October 6th, 2007, Bouchey performed an examination upon T.D. and she indicated that she had suffered vaginal contact by the penis. (**T-452**). Further, there was ejaculation by the suspect. (**T-452**). According to T.D., Reed allegedly threatened her with a gun. (**T-453**). Bouchey collected a DNA sample from T.D. (**T-453**). The physical findings of his examination neither confirmed nor negated any allegations of sexual assault. (**T-455**).

After the trial judge read the Williams-Rule-Evidence instructions to the jury, Bouchey testified that on March 17th, 2008, he examined T.B. (**T-456-57**). T.B. was a Caucasian female. (**T-458**). T.B. indicated that she was the victim of forced penile-vaginal sexual intercourse. (**T-459**). T.B. was a Known acquaintance of Reed. According to Bouchey, T.B. indicated that Reed forced her to have vaginal/penile intercourse. (**T-462**). T.B. admits to having oral/penile intercourse also unwarranted. (**T-462**). The exam neither confirmed nor negated T.B.'s allegations of sexual abuse. (**T-463**).

On cross-examination, Bouchey acknowledged that there were no physical indications of sexual battery. (T-482). Bouchey further acknowledged that T.B. and Reed knew each other. (**T-483**). After Bouchey's testimony, the jury was informed that Reed had stipulated that he had previously pleaded guilty to raping T.B. and to raping J.K. (**T-486**).

Reed testified that he had never raped anybody and that he was falsely accused of rape because he was picking up prostitutes and never paid them. (**T-514, 532-33**). According to Reed, he met the victim V.P. when he was riding around trying to find prostitutes. (T-514). At some point, Reed encountered V.P. at a bus station. Reed pulled up to V.P. and he said , "Hey, what's up?", V.P. responds, "What's up?"' So Reed said, "get in before the police see us." V.P. entered and Reed drove away. (**T-515**). During the drive, Reed and V.P. conversed. V.P. told Reed that

8

she was just getting high, whereupon Reed advised the victim that she needed to find a real job. (T-515). In response, the victim informed Reed that she already had a job babysitting for her brother. (T-515). Reed replied that the V.P. was just the type of person he needed because he might need a babysitter. (T-515). However, V.P. informed Reed that she won't be babysitting tonight because she wanted to get high. (T-515). Reed informed V.P. that they could get high. (T-515). Shortly thereafter, Reed pulled on the side of [his] house because [his] girlfriend was in there with [their] kids. (T-516). After turning his van off, Reed inquired as to what V.P. would exchange and learned that it would be a $20 piece.[2] (T-516). In response, Reed asked the victim to specify the sexual acts that she would perform. (T-516). For the $20 piece, V.P. offered to perform oral sex on Reed. Reed rejected that offer, then stating that he would provide the $20 piece only if V.P. would have penile-vaginal sexual intercourse with him. (T-516).

According to Reed, V.P. agreed to have penile-vaginal sexual intercourse, after which there ensued a brief discussion about who would ride whom. (T-517). Shortly after, V.P. pulled her pants down but she didn't take her panties off. (T-517). V.P. informed Reed that she intended not to fully remove her panties but merely pull them to the side. (T-517). Reed testified that this displeased him and he told V.P., no because the panties will, you know, rub against his penis and that's going to hurt. (T-517). Reed demanded that the V.P. take off one leg out of her panties. (T-517). Reed testified that V.P. partially removed her underwear, then he instructed her to come up on the seat a little bit because V.P. was going to have to prop her legs up on the dashboard where his penis was not erect. Reed informed V.P. that she got to get it up. (T-517). Reed then testified that V.P. replied, "Oh, that aint't no problem" and subsequently fellated him. (T-517).

---

[2] From Reed's subsequent testimony, it is apparent that a $20 piece referred to $20 worth of an illegal narcotic. (T-520-23).

Shortly after, Reed's penis still is not erect and he consequently said, "Nah, we might as well just forget this." **(T-518)**. However, Reed testified that V.P. objected and reminded him that he had promised to buy her a $20 piece. **(T-518)**. Reed then stated that he would obtain a flashlight to watch it go in and out, then his penis would become erect. **(T-518)**. Reed put his pants on and snuck into the house so his girlfriend wouldn't hear him. **(T-518)**. Reed obtained a flashlight and reentered the van, and V.P. made room to let Reed get back in between her legs. **(T-518)**. Reed testified that once he was able to see V.P. performing oral sex his penis became erect. **(T-518)**. Reed then testified that V.P. grabbed his penis and stated, "I'll put it in." **(T-519)**. Reed testified that it wouldn't go in and accused V.P. of being so high that she could not insert his penis into her vagina. **(T-519)**. Shortly after, V.P. and Reed engaged in penile-vaginal sexual intercourse. **(T-519)**. At some point during the act, V.P. informed Reed that she was in pain stating, according to Reed, "it hurts read bad that your too big." Reed testified that upon hearing of V.P.'s discomfort, he inquired as to whether she wanted him to stop. **(T-519)**. Reed then testified that V.P. responded no and explained that she wanted her $20 piece. **(T-519)**. V.P. told Reed to just go slow and he complied. **(T-519)**.

Reed had testified that he and V.P. were progressing, he saw his bathroom light turn on. **(T-519)**. Reed then told V.P. that his girlfriend was awake and urge her to please hurry up. **(T-519)**. Reed testified that he began pumping her faster. **(T-519)**. Reed testified that V.P. likewise urged him to please hurry since V.P. did not want to encounter his girlfriend. **(T-520)**. Then Reed told V.P. that his girlfriend "don't come out in the morning time like this" since she was probably getting the kids ready for school. **(T-520)**. V.P. again urged Reed to hurry. **(T-520)**. Reed then began stroking her hard and told V.P. that he would not be able to remove his penis from her vagina before ejaculating unless she changed the position of her legs. **(T-520)**. Reed

10

testified that V.P. stated, "Don't worry about it", explaining that during the course of the sexual activity that removal was unnecessary since she could not have children. **(T-520)**. Reed testified that he acknowledged V.P.'s statement by saying, "Here it comes" then ejaculated while his penis was still inserted into V.P.'s vagina. **(T-520)**.

After the penile-vaginal sexual intercourse, Reed dressed himself, turned on the van's engine, and then pulled out and drove away. **(T-521)**. After V.P. had her clothes back on, she asked Reed where they were going. **(T-521)**. Reed reminded V.P. that she "wanted her $20 piece" and explained that he was driving to where the drug boys sell drugs. **(T-521)**. Upon seeing someone that sold drugs, Reed pulled over real slow and attempted to purchase a $20 piece but Reed was unsuccessful since the drug boy believed V.P. to be a law-enforcement officer. **(T-521)**. After multiple unsuccessful attempts to purchase narcotics, Reed offered to try one more spot. **(T-523)**. Reed testified that it was already getting to be daylight and he informed V.P. that since he would shortly be taking his children to school that he was not going to be riding around looking for drugs since he doesn't do that. **(T-523)**.

Ultimately, Reed told V.P. to let him just give her the money. **(T-523)**. Reed testified that his failure to purchase the narcotics made V.P. highly angry. After being offered $20, V.P. balled it up and threw it and it hit him on the side of his face. **(T-523)**. Reed testified that V.P. began to cry when she realized that Reed was not going to get her drugs. **(T-523)**. Reed then drove toward Grand Park and while at a stop sign, V.P. opened the door and she jumped out because she was very angry. **(T-528)**. Reed then threw the $20 dollar bill to V.P. and she picked it up, then walked in front of his van. **(T-528)**. Reed then closed the door, drove away and heard nothing of the matter until May of 2015.

When asked about what occurred with the other victims (T.D.), Reed testified that he recalled the pertinent events. (**T-530**). Reed detailed the circumstances under which he met T.D. Reed testified that it was raining on that day and he saw T.D. walking. (**T-531**). Reed offered to drive T.D. and she had accepted but did not state where she was going. (**T-531**). Reed testified that he and T.D. agreed to have oral sex and vaginal sex for drugs. (**T-531**). T.D. and Reed did engage in penile-vaginal sexual intercourse and oral sexual intercourse. (**T-531**). However, Reed never provided drugs to T.D. (**T-532**). Reed described his act as one in which he just bamboozled her all the way and lied to her about everything. (**T-532**). Reed also testified that he never owned any El-Dorado, any rust-colored vehicle, or any MPV. (**T-532**). Reed further testified that he had never owned a firearm. (**T-532**).

On cross-examiantion, Reed acknowledges that he lied to police. Specifically, he acknowledges that he previously claimed falsely that he did not have sexual relations with any prostitutes when he was dating his then girlfriend. (**T-544**). Reed also testified that one of the victims had consensual sex with him because she wanted to make fast and quick cash. (**T-547**). When asked why multiple women, each a stranger to the others, would come up with this story, reed testified that he guessed that they came up with a story. (**T-549**). When asked to explain why the plea form stated that he pled guilty because he was guilty, Reed maintained that he never read the plea form. (**T-550**). Finally, when asked whether all the women simply made up the story, Reed testified affirmatively and acknowledged that "I was doing the same thing to them." (**T-553**).

During the charge conference, Reed's trial counsel made no objections to the instructions on evidence of other crimes, wrongs, or acts." (**T-570**) The jury found Reed guilty as charged in the information of Sexual Battery with a Deadly Weapon as to Count(s) One and Two, guilty of

the lesser - included offense of Sexual Battery with threat of force as to Count Three. (T-651-652) The trial Court adjudicated Read guilty of Count (s) one and Two, first - degree felonies punishable by Life, and Count Three, a first - degree felony. The trial Court imposed Concurrent Life sentences as to Count(s) one and Two, and a 30-year prison sentence as to Count Three. (R-545) The trial Court designated Reed a sexual predator. (T-548) Reed's trial Counsel filed a timely Notice of Appeal.

13

## II. GROUNDS RAISED IN CURRENT § 2254 PETITION

In this Petition, the Petitioner is raising more than four grounds and contends that he was deprived of effectiveness of Counsel, which is guaranteed by the Sixth Amendment to the United States Constitution - Applicable to Florida through the Fourteenth Amendment - And Article 1, 9, Section 16, of the Florida Constitution. He further contends that reversal is warranted. Furthermore, He contends that these grounds raised violated his 14th Amendment rights and his Sixth Amendment Rights to the United States Constitution and his 5th Amendment Rights to the United States Constitution and Article 1, 9 of the Florida Constitution. Petitioner has stated All grounds he which he is being held in violation of the Constitution, laws, or treaties of the United States. with Specific facts to each ground raised in this Petition in his Exhibit PAGES which are Attached Separate, And has Attached Additional Pages for his arguments.

8

IN THE UNITED STATES DISTRICT COURT OF APPEAL
MIDDLE DISTRICT OF FLORIDA

VICTOR V. REED,
            Plaintiff,

                                    Case no: 16-2015-CF-4140
        VS.

RICKY D. DIXON, Secretary,
Department of Corrections.


                NOTICE OF FILING

    I, Victor V. Reed, through Pro Se, gives notice of

filing the attached motions and other documents.


            The Motions and documents
                    Includes:

Motion of Solvency
Certificate of Service
Certificate of acknowledgement
Notice of Appeal
  OATH

                            /s/ Victor V. Reed
                            Victor V. REED
                            #D49096
                            Pro Se

IN THE UNITED STATES DISTRICT COURT OF APPEAL
MIDDLE DISTRICT OF FLORIDA


VICTOR V. REED,
            Plaintiff,

                                    Case no: 16-2015-CF-4140

        VS.

RICKY D. DIXON, Secretary,
DEPARTMENT OF Corrections
            Respondent.


            NOTICE OF APPEAL

    Notice is hereby given that Victor V. Reed, hereby appeal to

the United States Court of Appeal for the Fourth Circuit, from the Judge-

ment entered in this action on the


    Date this 4th    date of April    2024,


                        /s/ _____
                        Victor V. Reed
                        Franklin Correctional Institution
                        1760 Highway 67 NORTH
                        Carrabelle, FLORIDA  32322
                        # D.O.C - D49086

1

# MOTION TO ADJUDGE DEFENDANT INSOLVENT FOR PURPOSE OF APPEAL

Now comes, Viltor V. Reed, Pro Se, and requests entry of an Order in conformance with this Motion providing that:

(1) Defendant is incarcerated and financially unable to pay for the cost of his appeal and has previously been adjudge insolvent.

(2). Defendant remains insolvent for purposes of this appeal. As grounds for this Motion, defendant asserts that he has previously been determined to be indigent in this Cause and swears and affirms that he remains so for purposes of this appeal, and that no material change in his financial condition has occured.

Date this 4th date of April 2024,

/s/ Viltor V. Reed
VILTOR V. REED
# D.O.C. - D49096
Pro Se

IN THE UNITED STATES DISTRICT COURT OF APPEAL
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


VICTOR V. REED,
      plaintiff,          case no: 16-2015-CF-4140

     VS,

RICKy D. DIXON, Secretary, Florida,
DEPArtment of Correction,


## OATH

Under penalties of perjury and administrative sanctions from the Department of Corrections, including forfeiture of gain time if this motion is found to be frivolous or made in bad faith, I certify that I understand the contents of the foregoing motion, that the facts contained in the motion are true and correct, and that I have a reasonable belief that the motion is timely filed. I certify that this motion does not duplicate previous motions that have been disposed of by the court, I further certify that I understand English and have read the foregoing motion or had the motion read to me or the foregoing motion was translated completely into a language which I understand and read to me.

/s/ _____
Victor V. REEd
#D.O.C. - D49096

IN THE UNITED STATES DISTRICT COURT OF APPEAL
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

VICTOR V. REED,
        plaintiff,

VS.

RICKY D. DIXON, Secretary, Florida,
DEPARTMENT OF Correction.
                Respondent.

PROVIDED TO FRANKLIN
WORK CAMP
FOR MAILING ON
4 , 4 , 24
INMATE INITIALS VR

CERTIFICATE OF SERVICE

I HEREBY Certify that a Copy of the foregoing document was placed
in the hands of an institutional official at Franklin Correctional Institution this
4th  day of April   2024.

ASHLEY MOODY
ATTORNEY GENERAL
OFFICE of THE ATTORNEY GENERAL
PL - 01, THE CAPITOL
TALLAHASSEE, FL 32399-1050

THE UNITED STATES Courthouse
300 NORTH Hogan Street
Jacksonville, Florida 32202

/s/ Victor V. Reed
Victor V. REED
Franklin Correctional Institution
1760 Highway 67 NORTH
Carrabelle, Florida 32322
# D.o.C. - D49096